UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CHEVRON MIDSTREAM                                           CIVIL ACTION
PIPELINES LLC, ET AL.

VERSUS                                                      NUMBER: 13-2809
                                                            c/w 13-3197

SETTOON TOWING LLC, ET AL.                                  SECTION: "A"(5)


**ORDER AND REASONS**

Before the Court is the latest in a series of motions arising out of Settoon's efforts to obtain responses to fairly routine written discovery requests from Chevron (and its contractors) and the vigorous efforts of Chevron to resist that discovery. In ruling on the prior discovery Motions,[1] this Court has found wanting several of Chevron's objections. That theme will continue to some extent here, albeit for different reasons.

This Order pertains to Settoon's Motion to Compel Production of Documents Listed in Chevron's Privilege Log. (Rec. doc. 277). Settoon's Motion is opposed by Chevron. (Rec. doc. 293). This particular dispute arises out of Chevron's refusal to provide some 119 documents it concedes "may have been responsive" to Settoon's Request for Production Number 29. (*Id.* at p. 1 n.1).[2]

---

[1] The previous rulings are reflected in the following: (Rec. docs. 309 and 313).
[2] Chevron also concedes the subject documents may be responsive to claimant's, Vernon Whittington's ("Whittington's"), Request for Production 20.

Settoon argues that the documents at issue are actually responsive to a number of requests, most particularly Requests 29 and 30, along with Whittington's Request 20. Here are all three relevant requests, along with Chevron's responses:

> **[SETTOON'S] REQUEST FOR PRODUCTION NO. 29:**
> Please produce any and all documents related to any and all repair efforts related to the Pipeline performed by you or anyone on your behalf as a result of the Incident including but not limited to surveys, drawings, reports, daily logs, correspondence, work orders, purchase orders and invoices.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**
> Subject to the general objections, Chevron responds it will produce non-privileged, responsive documents.
>
> **[SETTOON'S] REQUEST FOR PRODUCTION NO. 30:**
> Please produce any and all documents concerning supporting and/or evidencing your claim for damages including but not limited to surveys, drawings, reports, daily logs, earnings reports, financial statements, correspondence, work orders, purchase orders and invoices.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**
> Subject to the general objections, Chevron will produce non-privileged, responsive documents. Chevron will produce a preliminary spreadsheet itemizing Chevron's response and repair related damages. Chevron will also produce supporting invoices.
>
> **[WHITTINGTON'S] REQUEST FOR PRODUCTION NO. 20:**
> Any and all documents prepared by you and/or on your behalf which recorded or made reference to the incident in question, which documents were prepared within four weeks after the subject incident, including, but not limited to, logs, daily operational reports, watch summaries, morning reports, safety meetings, radio logs, dispatcher summaries, accident reports, etc.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**
> Chevron objects to this Request to the extent it calls for documents and information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. Subject to and without waiving these specific objections or the general objections, Chevron [will]

>produce non-privileged, responsive documents prepared within four weeks after the incident.

(Rec. docs. 277-3, pp. 16-17; 277-2, p. 12).

Settoon explains in its brief that, after providing the responses set forth above in June 2014, Chevron produced a series of privilege logs. (Rec. doc. 277-1 at pp. 5-6). The first such log listed some 656 documents withheld by Chevron on the basis of various privileges. (Rec. doc. 277-4). The production of this log precipitated a Rule 37 discovery conference between counsel that took place on October 14, 2014 and led in turn to a "revised" privilege log being issued by Chevron. (*Id.*). That revised log whittled down to 493 the number of documents withheld by Chevron over which it claimed some privilege. (Rec. doc. 277-6). Chevron's continued objection to releasing these documents led to the filing of the present Motion by Settoon on November 25, 2014.

Chevron filed its Opposition to that Motion on December 9, 2014. There are two important observations to make about that filing. First, a review of the record indicates this was the first time in response to Settoon's and/or Whittington's discovery requests that Chevron actually articulated specific objections to producing any particular document or category of documents, as opposed to reciting boilerplate and general objections. Second, attached to Chevron's Opposition to Settoon's Motion as Exhibit "A" is yet another privilege log, this one listing only 119 documents. (Rec. doc. 293-1). It is not at all clear to this Court how, why, or when the privilege log actually the subject of Settoon's Motion (listing 493 documents) morphed into the one attached to Chevron's Opposition (listing but 119 documents), but the fact that it did not happen until some six months after Chevron initially provided responses underlines a fundamental problem with those responses.

II. **ANALYSIS**

It is apt here to recall that the overarching goal of the Federal Rules of Civil Procedure is to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Rule 1 instructs that all of the Federal Rules, including those governing discovery, are to be "construed and administered" to achieve these ends. *Id.* With these notions in mind, the Court turns to the specific issues raised in this Motion.

As can be readily seen above, in responding to the discovery requests of both Whittington and Settoon, Chevron employed a tactic all-too-common in today's litigation world – the boilerplate objection. Worse still, in responding to the Settoon discovery requests that are subject of the present motion, Chevron didn't even bother to state those boilerplate objections specifically as to each request, choosing instead to bury them in "general" objections that Chevron then "incorporates into its objection to each individual Request as if repeated therein." (Rec. doc. 277-3 at p. 2).

The litany of boilerplate, general objections recited by Chevron is all too familiar in substance and tenor: "vague and ambiguous, overly broad, and unduly burdensome. . ., not relevant to this lawsuit or likely to lead to the discovery of admissible evidence." (*Id.*). Then there is this: "Chevron objects to each request **to the extent** it calls for information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity." (*Id.*) (emphasis added). In responding to Whittington's Request 20, Chevron at least stated this last objection in the body of its response. (Rec. doc. 277-2 at p. 12). Responding to Settoon's Requests 29 and 30, Chevron simply responded, "[s]ubject to the general objections, Chevron responds it will produce non-privileged, responsive documents." (Rec. doc. 277-3 at p. 17). Notably, there are eleven separate

4

"general objections" that those responses are made "subject to," including the above-quoted privilege objection. (*Id.*).

For the reasons explained below, these objections fall "woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1102 (D. N.J. 1996).

The Federal Rules of Civil Procedure take a "demanding attitude toward objections." 8 *C. Wright & A. Miller, Federal Practice and Procedure: Civil* § 2173 (2014). Courts throughout the country have long interpreted the rules to prohibit general, boilerplate objections. *See, e.g., McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485-86 (5th Cir. 1990)(simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection."); *see also Alexander v. FBI*, 192 F.R.D. 50, 53 (D. D.C. 2000)(in order to satisfy its burden, the objecting party must make a specific, detailed showing of how an interrogatory is burdensome); *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)(a mere statement by a party that an interrogatory is "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection); *Wurlitzer Co. (Holly Springs Division) v. U.S. E.E.O.C.*, 50 F.R.D. 421, 424 (N.D. Miss. 1970)(objections to discovery requests must be specific, and general objections that the information sought is irrelevant, immaterial, oppressive, conclusory or already in possession of the requesting party are insufficient).[3] An objection to a discovery

---

[3] Many of the cases refer to responses to interrogatories. Regarding the application of these principles to requests for production, the Fifth Circuit stated: "We see no reason to distinguish the standards governing

5

request is boilerplate when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request. *St. Paul Reinsurance Co.*, 198 F.R.D. at 512.

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the rules establish a heightened burden. The party must:

> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(i), (ii).

Boilerplate and general objections, including those vaguely asserting privilege(s), "are taglines, completely devoid of any individualized factual analysis." *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011). A judge should not have to wade through a sea of boilerplate objections only to discover that the objections did not represent the party's actual position, but were merely used to make the discovery process more difficult *See Hobley v. Chicago Police Commander Burge*, No. 03-CV-3678, 2003 WL 22682362 at *5 (N.D. Ill. Nov. 12, 2003).

Chevron's objections to both Whittington's and Settoon's requests fall "woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *Harding*, 914 F. Supp. at 1102. As to Whittington's requests,

---

responses to interrogatories from those that govern responses to production requests." *McCleod*, 894 F.2d at 1485.

Chevron merely objects "to the extent [the request] calls for documents and information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity."[4]  This "objection" is not really an objection at all and it comes nowhere near complying with the requirement of Rule 26 that the party "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Indeed, owing to the deployment by Chevron of the qualifying "to the extent" language in the response, the opposing party here, Settoon, cannot even tell **whether** any documents are being withheld, much less be in a position to "assess the claim" of privilege.

Chevron's responses to the Settoon requests are even more flawed, as they merely incorporate some eleven separate general objections and promise to produce "relevant, non-privileged" documents, without advising whether any irrelevant or privileged documents are being withheld.  Chevron did ultimately articulate specific objections, supported with facts and even an affidavit, but not until six months later and only after at least one Rule 37 conference and the filing of the instant Motion to Compel.

In that Opposition, Chevron articulated – for the first time – its specific argument that "legal involvement in the response, salvage and repair" of the VP-01 pipeline and the fact that "[i]n the immediate aftermath of the incident, the likelihood of litigation was clear. . .," the withheld documents are subject to the attorney-client and work-product privileges.  (Rec. doc. 293 at p. 2).  Likewise, Chevron waited until December 8, 2014 to produce an affidavit explaining:  (1) exactly who the contractors at issue were, (2) that Chevron

---

[4]  The Court has no idea what other unstated "privilege or immunity" might be "applicable" here; presumably neither do Whittington or Settoon.

considers them "litigation experts" and (3) the exact nature of their work and why it was protected. (Rec. doc. 293-2). This is exactly the information that should have been provided in connection with Chevron's initial responses. If these statements are, in fact, true and counsel was immediately involved and anticipating litigation following the incident at issue here, Chevron's failure to properly articulate its privilege objections over these "response, salvage and repair" documents until six months after first responding to the subject requests is all the more problematic.

There is a reason that specificity is required in these instances. Objections that fail to provide an appropriate factual basis make it difficult for the parties to even informally discuss any alleged defects in a discovery request or response in hope of fixing the defects. *In re Ingersoll*, 238 B.R. 202, 204-05 (D. Colo. 1999). This inhibits the parties' abilities to resolve discovery disputes on their own, as intended by the Rules. *Id.*

Incomplete, evasive and overly general responses and objections also put the requesting party at a tactical disadvantage in trying to shake free responsive documents. That party's redress under the Rules begins with the Rule 37 conference, which cannot be fairly (and therefore effectively) conducted when the requesting party does not even know the extent of what has been withheld or why.

One of Chevron's "General Objections" in this matter aptly illustrates the point:

> Chevron's statement in response to any discovery request that it will produce all relevant, non-privileged documents in its possession, custody, or control should not be interpreted to imply that any such documents exist.

(Rec. doc. 277-3 at p. 4).

So are documents being produced or not? For that matter, do they even exist? On what basis is **Chevron** deciding what documents are "relevant, non-privileged documents?"

8

No one knows (at least no one other than Chevron, which for now has decided to let its opponents guess at the answers).  General objections such as these are worse than unhelpful, as they actually render potentially meaningless the specific responses to specific requests provided later in the pleading, such as Chevron's responses to Requests 29 and 30 here.  It is impossible for anyone, including the Court, to read Chevron's general objections and enumerated reponses together and be able to determine what was produced, what was withheld and why.

Such meaningless responses lead to additional problems.  In this case, they caused Chevron **and** Settoon to treat both the requests and the responses not as legitimate discovery devices, but as merely the first "demand" and "offer" in what devolved into a protracted negotiation over what were otherwise basic written discovery requests.  That six-month long process has now contributed to making discovery in this this litigation – and therefore the litigation as a whole – more costly, time-consuming and cumbersome for the parties, counsel and the Court.

The entire series of events set in motion by Chevron's improper objections is antithetical to the goals of the Federal Rules.  For this reason, any documents that are actually responsive to the subject requests should be produced.

The Court has reviewed every one of the 119 disputed documents *in camera* to determine whether they are responsive to Settoon's and/or Whittington's Requests for Production.  Indeed, Chevron states that they were listed in the privilege log because they "may have been responsive to Captain Whittington's Request for Production 20 and Settoon Request for Production 29."  (Rec. doc. 293 at p. 1 n.1).  After reviewing the documents, the Court finds that each of the documents is responsive to either or both of

Settoon's Requests for Production 29 and 30 and Whittington's Request 20. (Rec. doc. 277-3). Accordingly, with the following limited exceptions, the Court will order all of the documents listed in the current Chevron privilege log to be produced.

The Court notes that both parties have indicated that they reached an agreement to eliminate from contention in this motion "all emails and/or documents listing any Liskow & Lewis counsel or Chevron counsel as either the custodian, sender or recipient" and that numerous such documents were removed from Chevron's privilege log. (Rec. doc. 277-1 at p. 5). In its *in camera* review, the Court identified certain documents that fit this description on their face, despite their not having been identified as such in the revised log. The Court believes, based on the totality of the record, that these documents remain on that log due to an oversight or miscommunication between counsel. Given the total volume of documents involved in this exercise, the many iterations of privilege logs and counsel's agreement not to seek communications involving outside or in-house counsel for Chevron, the Court finds some of this information, detailed below, should be protected by the parties' agreement.

Accordingly, Settoon's Motion to Compel is GRANTED IN PART and DENIED IN PART. The following enumerated entries shall be produced by Chevron with redactions: documents 83-87 are to be produced but the email from Denise Boihem to Amira Love, Joel Youngblood and David Leefe, dated March 27, 2013, is to be redacted. Documents 101-103 are to be produced but the email from David Leefe to Denise Boihem, dated March 22, 2013, is to be redacted. Document 107 is not to be produced.

All other documents listed on Chevron's revised privilege log (rec. doc. 293-1) are to be produced.

New Orleans, Louisiana, this  20th  day of            January            , 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE